**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VICTORIA ROMIG, ) | |
| ) | CASE NO.  1:12-cv-001552 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Victoria Romig ("Romig") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On February 20, 2008, Romig filed an application for POD and DIB alleging a disability

onset date of May 1, 2006. Her application was denied both initially and upon reconsideration. Romig timely requested an administrative hearing.

On January 15, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Romig, represented by counsel, and an impartial vocational expert ("VE") testified. On March 3, 2010, the ALJ found Romig was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age forty-eight on her date last insured, Romig was a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). (Tr. 22.) Romig has a high school education and past relevant work as a cashier/checker and small products assembler. *Id.*

*Hearing Testimony*

At the hearing, Romig testified as follows:

- She has not lived on her own in two years. (Tr. 32.)

- She graduated from high school but was in special education classes. *Id.*

- In 1997 or 1998, she attended vocational school for computerized office technology and received a certificate. (Tr. 32-33.)

- She never had a driver's license, but passed the written examination several times. However, she gets very nervous about driving and has never taken the road exam. (Tr. 33.)

- She last attempted to work at Little Caesar's pizza over a year earlier. She worked only part-time, and prepared the dough. She worked there for nine to twelve months, about four hours per day. She thinks she was laid off. (Tr. 34-35.)

- Between 1999 and 2001, she was a cashier at K-Mart. (Tr. 36.) In 1995, she worked in a factory operating a machine making igniters for gas grills. That job was performed primarily in a seated position. (Tr. 37.)

- The main problem that prevents her from working is pain in her lower back. She had surgery two to four years earlier after a car accident. (Tr. 39-40.) She did not recall having any treatment for her back within the past two years, though she does continue to see her family physician and takes medication. (Tr. 40.)

- She was having trouble with her left shoulder, but had "no medical [insurance] to get treated." She injured it the previous summer jumping off a trampoline. (Tr. 40-41.) At the hospital, she was told that she needs surgery on her left shoulder. (Tr. 50.)

- She can use her right arm, but only within certain limitations. She cannot lift more than ten pounds using both arms. (Tr. 41-42.) She can reach above her shoulder with her right arm, but not her left. (Tr. 42.)

- She was prescribed Synthroid for her thyroid, Lasix (a water pill), Seroquel and Pristiq for her bipolar disorder, and Lexapro and Klonopin for anxiety. (Tr. 43-44.) Her medication helps with her anxiety. She becomes anxious around large groups of people, but has not suffered any panic attacks. (Tr. 49-50.)

- She does her own cooking and laundry, but grocery shops together with her sister. (Tr. 47.)

- She leaves the house every other day. She walks to a nearby soup kitchen or the library. (Tr. 48.)

- She can sit for two to three hours at a time before needing to get up and stretch. She does not lay down during the day. (Tr. 49.)

- Her blood pressure is under control. (Tr. 50-51.)

The ALJ posed the following hypothetical to the VE:

Consider the claimant's younger age, she's a younger individual per our regulations, consider the 12 years of special education that she had, she did have a certificate in computerized technology but never put that to use in employment and consider the work that you just classified, assume for the time being that she is limited in her ability to lift up to 10 pounds frequently, 20 occasionally, assume that she does need a sit/stand option roughly every 30 minutes or so must change positions, there should be no pushing or pulling against any resistance with the upper extremities, there should be no overhead work with either upper extremity,

3

>so called postural activities would be limited to occasionally, she would be limited to simple, routine tasks, there should be minimal if any interaction with the public, and there should be no fast paced or production type of work.

(Tr. 53-54.)

The VE testified that such an individual would be unable to perform Romig's past relevant work. (Tr. 54.) The VE further testified that "[t]he only job that would not be eliminated that meets all the criteria [the ALJ] outlined would be warehouse checker, DOT number 222.687-010, unskilled, SVP 2, light. Nationally, there are approximately 42,000 similar jobs and, in Ohio, there are approximately 1,000." (Tr. 54.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Romig was insured on her alleged disability onset date, May 1, 2006, and remained insured through December 31, 2008. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Romig must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Romig established medically determinable, severe impairments, due to osteoarthritis of the right shoulder, affective disorder, and thyroid disorder. (Tr. 17.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17-18.) Romig was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 19, 22.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Romig was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Credibility*

Romig asserts that the ALJ improperly found her only partially credible, because the credibility analysis violated both Sixth Circuit precedent and federal regulations.  (ECF No. 13 at 12.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.  20 C.F.R. §§ 404.1529 & 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability").  It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First,

7

the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96-7p.  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record.  *Id.*  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight."  SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to

8

credibility which are not consistent with the entire record and the weight of the relevant evidence.") Beyond medical evidence, there are seven factors that the ALJ should consider.[2] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ expressly found that "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they were inconsistent with the ... [RFC] assessment." (Tr. 20.) After a brief review of both Romig's subjective complaints, as contained in the record and as described during the hearing, and the medical records, the ALJ found Romig's claims regarding her limitations not credible as follows:

> The medical evidence discussed above shows that the claimant's allegations of disabling pain, lack of mobility, and mental impairments, which are found in the claimant's disability reports and hearing testimony, are inconsistent with objective findings and subjective findings on examinations prior to December 31, 2008. The claimant's symptoms exceed the objective findings contained in the medical records prior to December 31, 2008. The claimant's testimony is not well supported by the medical evidence of record prior to December 31, 2008.

---

[2] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732-733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

> Accordingly, the undersigned finds that the claimant's allegations and subjective complaints are not fully credible.

(Tr. 20-21.)

Although the ALJ was under no obligation to accept Romig's testimony as credible, he was obligated to provide reasons for his credibility finding that are sufficiently specific to allow subsequent reviewers, such as this Court, to understand the result. Here, the ALJ did not discuss any of the seven factors set forth in SSR 96-7p. While the ALJ mentioned some of Romig's daily activities, he fails to explain how these activities either support or detract from her credibility. (Tr. 20.)

The Commissioner argues that substantial evidence supports the ALJ's credibility finding. (ECF No. 15 at 16-19.) Tellingly, the Commissioner extensively cites the medical records but not the ALJ's actual credibility analysis. While the Commissioner discusses Romig's daily activities and treatment, including medication, in his brief as it relates to Romig's credibility, the ALJ did not. *Id.* This Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("We cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

Though the Commissioner may indeed be correct that substantial evidence exists in the record to support the credibility finding, the ALJ failed to comply with applicable procedural

requirements when doing the analysis. Therefore, a remand is warranted.

*Examining Physician*

Romig also argues that the ALJ erred by failing to adequately explain why he assigned "minimal weight" to the opinion of Richard C. Halas, M.A., an examining clinical psychologist. (ECF No. 13 at 9-12.)

There is a general order of preference to first give greater weight to the opinion from a treating physician followed next in line by an opinion from a non-treating examining physician. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010); *Rogers*, 486 F.3d at 245; 20 C.F.R. §§ 404.1527(c)(1–2) & 416.927(c)(1–2) (defining "Examining relationship" and "Treatment relationship"). The ALJ must give "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007) ("Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."). With regard to nontreating, but examining sources, such as Mr. Halas, "the agency will simply '[g]enerally [ ] give more weight to the opinion of a source who examined [the claimant] than to the opinion of a source who has not examined'" her. *Ealy*, 594 F.3d at 514. The procedural "good reasons" requirement does not apply to non-treating physicians. *Smith*, 482 F.3d at 876 (explaining that "[i]mportantly ... this reasons giving requirement exists only for § 404.1527(d)(2), and not for the remainder of § 404.1527" and concluding: "[i]n the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports"). The ALJ's sole explanation for the weight assigned to Mr. Halas's opinion was that the limitations he ascribed to Romig

were "disproportionate to the medical evidence of record as a whole." (Tr. 22.) The Commissioner's brief contains extensive citations to the record and argues that the ALJ's finding was supported by substantial evidence. While the Commissioner's argument is persuasive, such a detailed explanation is notably absent from the ALJ's opinion.

Because remand has been deemed necessary on other grounds, the Court declines to address whether the ALJ's explanation for according Halas's opinion minimal weight satisfied the Social Security Administration's procedural standards as well as federal regulations. Nonetheless, a more detailed explanation upon remand would allow a more meaningful review.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner failed to follow the proper legal standards. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: March 18, 2013